[Cite as *Cornell v. Cornell*, 2015-Ohio-5296.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CARRIE A. CORNELL (KOVERMAN) | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26732 |
| | : | |
| v. | : | Trial Court Case No. 2004-DR-469 |
| | : | |
| KEVIN L. CORNELL | : | (Civil Appeal from Common Pleas |
| | : | Court-Domestic Relations) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of December, 2015.

. . . . . . . . . . .

CARRIE A. CORNELL (KOVERMAN), 8394 Hawks Nest Court, Centerville, Ohio 45458
     Plaintiff-Appellee-Pro Se

DAVID M. MCNAMEE, Atty. Reg. No. 0068582, MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
     Attorneys for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, Kevin Cornell, appeals from a judgment ordering him to pay Plaintiff-Appellee, Carrie Cornell (Koverman), $200.00 per month in child support plus an additional amount on an arrearage.[1]  Kevin contends that the court erred in ordering him to pay child support because no change in circumstances occurred. Kevin also contends that the court erred when it failed to adjust the child support downward to zero.

**{¶ 2}** We conclude that the trial court did not err in finding a change of circumstances under R.C. 3119.79.  The court also did not abuse its discretion by failing to grant a downward deviation in child support to zero.  Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

**{¶ 3}** The parties in this case were divorced in May 2005.  At the time, they agreed to, and the court ordered, shared parenting of their minor daughter, G.C., who was then almost four years old.  G.C. spent equal time with each parent, and no child support was ordered.  When the divorce decree was filed, Carrie was earning about $22,000 per year, and Kevin earned about $19,600.  The court ordered Kevin to pay $125 per month toward daycare expenses so long as the child was in daycare.  Carrie was to provide health insurance through her employer, and the parties were each required to pay one-

---

[1] For purposes of convenience, we will refer to the parties by their first names.

half of the expenses related to their daughter.

{¶ 4} In August 2014, Carrie filed a motion asking the court to order Kevin to pay child support. After an evidentiary hearing, a magistrate filed a decision imputing $39,000 in income to Carrie, and ordering Kevin to pay $200 per month in child support, plus $40 on an arrearage that had accumulated since the time the motion for child support was filed. Kevin filed objections to the magistrate's report, plus a transcript of the hearing.

{¶ 5} After considering the objections, the trial court overruled them, and ordered Kevin to pay $200 per month in child support, $40 on the arrearage caused by the order, and a two-percent processing fee. Kevin timely appealed from the trial court's decision.


## II. Did a Change in Circumstances Occur?

{¶ 6} Kevin's First Assignment of Error states that:

The Trial Court Erred When It Ordered Defendant/Appellant to Pay Child Support Because No Change in Circumstance with the Parties Has Occurred.

{¶ 7} Under this assignment of error, Kevin contends that no change in circumstances occurred. In this regard, he notes that Carrie had greater income at the time she filed the motion for child support than she did at the time of the divorce decree, and that she no longer incurs daycare expenses. Kevin also notes that he provides medical insurance, exercises a little more than half the parenting time, and pays for various expenses for the child.

{¶ 8} "In order to modify child support, the trial court must find a substantial change

in circumstances, which is defined in R.C. 3119.79(A) as a ten-percent deviation from the amount of child support previously ordered."  *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533, ¶ 47 (2d Dist.).

{¶ 9} When a motion to modify is filed, the court must recalculate the amount of support that would be required to be paid by using the child support schedule and the applicable worksheet.  R.C. 3119.79(A).  If the amount deviates 10% more or less from the prior order, the statute states that "the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet *shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.*"  (Emphasis added.)  *Id.*  Thus, in this situation, the trial court has no discretion, but must consider the amount a change of circumstances sufficient to require modification.

{¶ 10} Consistent with the statute, the magistrate performed the calculations using the applicable schedule and worksheet.  The magistrate then relied on a decision of the Supreme Court of Ohio which stated that "[o]bviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met."  *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540, 679 N.E.2d 266 (1997).

{¶ 11} We agree with the trial court that a change in circumstances existed.  In objecting to the magistrate's decision, and in his appeal here, Kevin has not claimed error in the calculations on the worksheet; he has instead argued about the parties' circumstances, i.e., that Carrie had greater income when she filed her motion, but then voluntarily quit that employment, that Carrie was no longer paying child care; that he paid

for additional expenses of the child, and so forth. However, the court stressed in *DePalmo* that "[t]he ten percent difference applies to the *change in the amount of child support*, not to the change in circumstances of the parents." (Emphasis sic.) *Id.*

**{¶ 12}** Because the figures on the completed child support sheet indicate that a deviation of more than 10% existed between the prior order (zero dollars) and the current support due from Kevin ($2,400 per year, or $200 per month), the trial court did not err in concluding that a substantial change of circumstances existed. Furthermore, while the prior order did not order support, we have previously stressed that "the parties' prior agreement cannot override the trial court's duty to review the child-support issue when one of the parties requests child support." *Quint v. Lomakoski*, 173 Ohio App.3d 146, 2007-Ohio-4722, 877 N.E.2d 738, ¶ 40 (2d Dist.), citing *DePalmo* at 539-540.

**{¶ 13}** Accordingly, the First Assignment of Error is overruled.


III.   Was the Failure to Reduce Support to Zero an Abuse of Discretion?

**{¶ 14}** Kevin's Second Assignment of Error states that:

The Trial Court Erred When It Failed to Deviate Child Support to Zero Because the Amount Ordered is Unjust, Inappropriate and Not in the Best Interest of the Child.

**{¶ 15}** Under this assignment of error, Kevin argues that the trial court should have allowed a deviation in support to zero, because he spent equal time with G.C. and paid for extracurricular activities and health care. Kevin also notes that the parties have similar incomes.

**{¶ 16}** In *DePalmo*, the Supreme Court of Ohio held that:

Whether a court is establishing an initial child support order or whether the court is modifying an order based on agreement between parties that does not include any order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.

*DePalmo*, 78 Ohio St.3d at 535, 679 N.E.2d 266, paragraph one of the syllabus.[2]

{¶ 17} In *Marker*, the court held that "[a]ny court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." *Marker at* 139, paragraph three of the syllabus. We review the trial court's decision on child support orders for abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 18} "Generally, the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." *Johnson v. McConnell*, 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, ¶ 15, citing R.C. 3119.03. However, pursuant to R.C. 3119.22, courts can order an amount of child support deviating from the amount that would otherwise be due under the child support schedule if, after considering

---

[2] Although the child support statutes were revised after *Marker* was decided, courts have held that the reasoning set forth in *Marker* applies except where the parties earn less than $6,600 or more than $150,000. *See, e.g., In re J-L.H.*, 8th Dist. Cuyahoga No. 100469, 2014-Ohio-1245, ¶ 12-25.

the factors in R.C. 3119.23, the court decides that the calculated amount "would be unjust or inappropriate and would not be in the best interest of the child."   R.C. 3119.22.

{¶ 19} R.C. 3119.23(D) is the factor upon which Kevin most heavily relies.   This subsection of the statute allows for a deviation where extended parenting time or extraordinary costs are associated with parenting time.   After Kevin discussed the specific parameters of the parties' respective parenting time, the following exchange occurred:

Q.   So somewhere around equal parenting time?

A.   Yeah.   A little bit more.

Q.   What was that last portion?

A.   A little more.

Transcript of Proceedings, p. 16.

{¶ 20} The trial court did not act unreasonably in failing to order a deviation to zero on the basis that one parent spends a "little bit more" time with a child.   Notably, the court did order a deviation of nearly 40% for this factor.   While another fact-finder might have ordered a different deviation (either more or less, depending on the circumstances), the failure to do so was not "unreasonable, arbitrary, or unconscionable."   (Citations omitted.)   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 21} Furthermore, in *Hamby v. Hamby*, 2d Dist. Montgomery No. 26506, 2015-Ohio-1042, we concluded the trial court did not err in ordering a less substantial deviation than a parent had requested for increased housing costs, utilities, and food expenses, because the parent did not detail these items in his testimony, and they were "not easily subject to precise calculation."   *Id.* at ¶ 17.   Similarly, any alleged financial burden

imposed by spending a "little bit more" time with a child is not subject to precise calculation. In any event, the additional expense was not detailed.

{¶ 22} Kevin appears to argue that whenever a shared parenting arrangement is involved, a deviation should be required, because otherwise, the non-residential parent who spends a good deal of time with the children will pay "twice." However, this is not the law. *See Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 11 (stating that "even though a shared parenting plan is involved, no automatic credit in the support order is warranted.") (Citations omitted.)

{¶ 23} In this regard, we note that while Carrie was earning slightly more than Kevin when the shared parenting decree was adopted, Kevin's income has substantially increased since that time, to about twice as much as he was earning before. In addition, the trial court did impute income of $39,000 to Carrie, even though she was, in fact, earning only about $14,000 per year at the time of the hearing.

{¶ 24} As a further matter, both the trial court and magistrate did provide Kevin with a downward deviation of $1,578.15 per year, based on the parties' parenting time. This was a deviation of about 39.67% or almost 40%, from Kevin's annual support obligation of $3,978.15. *See* Sole Residential Parent or Shared Parenting Worksheet, pp. 5-6, attached to Doc. #108; and Sole Residential Parent or Shared Parenting Worksheet, pp. 5-6, attached to Doc. #118.

{¶ 25} As a result, we cannot say the court failed to use a "sound reasoning process" in not reducing the support amount to zero on the basis of the roughly equal parenting time. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (noting that most

abuses of discretion occur when a decision is unreasonable, and that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision.")

**{¶ 26}** The other factor that Kevin relies on is covered by R.C. 3119.23(J), which permits a deviation for "[s]ignificant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing." Kevin argues that he should have received a reduction because he paid for volleyball expenses, a physical for volleyball, and expenses for the swim team. Again, Kevin failed to detail the specific amounts. In contrast, Carrie testified that she had spent about $1,000 on guitar lessons for their child, and that Kevin did not contribute. Kevin also admitted at trial that Carrie had paid for a deposit for a trip to offset the physical and volleyball payments. He also admitted that he had not paid anything toward his daughter's cell phone costs.

**{¶ 27}** The "in-kind" contributions of both parents have been considered in making child support determinations. *See, e.g., Lopez-Ruiz v. Botta*, 10th Dist. Franklin No. 11AP-577, 2012-Ohio-718, ¶ 43. Additionally, Carrie's contributions, at a minimum, offset Kevin's unspecified contributions. Again, we cannot say that the trial court acted unreasonably by refusing to credit Kevin with a further downward deviation for his payment of expenses.

**{¶ 28}** Based on the preceding discussion, the Second Assignment of Error is overruled.

IV. Conclusion

**{¶ 29}** All of Kevin's assignments of error having been overruled, the judgment of

the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J., and DONOVAN, J., concur.

Copies mailed to:

Carrie A. Cornell (Koverman)
David McNamee
Matthew Barbato
Hon. Timothy D. Wood